Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RONALD KUHN, <br><br> Plaintiff, <br><br> vs. <br><br> NIELSEN HOLDINGS PLC, JAMES A. ATTWOOD, JR., DAVID KENNY, THOMAS H. CASTRO, GUERRINO DE LUCA, KAREN M. HOGUET, JANICE MARINELLI MAZZA, JONATHAN MILLER, STEPHANIE PLAINES, NANCY TELLEM, and LAUREN ZALAZNICK, <br><br> Defendants. | Case No.: <br><br> **Complaint For:** <br><br> (1)  Violation of § 14 (a) of the Securities Exchange Act of 1934 <br> (2)  Violation of § 20(a) of the Securities Exchange Act of 1934 <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, Ronald Kuhn ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Nielsen Holdings PLC ("Nielsen" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Elliott Investment Management L.P. ("Elliot") and

Brookfield Asset Management ("Brookfield," and together with Elliot, the "Parents"), through merger vehicle Neptune Intermediate Jersey Limited ("Merger Sub 1") and Neptune BidCo US Inc. ("Merger Sub 2," and collectively with Merger Sub 1 and Parents, the "Consortium") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a March 28, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Nielsen's common stock will be converted into the right to receive $28.00 in cash, without interest.

3.      Thereafter, on May 19, 2022, Nielsen filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of other reasons. Significantly, the Preliminary Proxy Statement describes an insufficient process in which the Board rushed through an inadequate "sales process" in which no special committee of independent and disinterested directors was created to run the sales process.

5.      Further, the Preliminary Proxy Statement fails to disclose why it was necessary to engage two separate financial advisors.

6.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Board

Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.    In violation of the Exchange Act, on May 19, 2022, Defendants caused to be filed the materially deficient Preliminary Proxy Statement.  The Preliminary Proxy Statement is materially deficient, and is thus in violation of the Exchange Act.  As detailed below, the Definitive Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Nielsen, provided by Nielsen management to the Board's financial advisors Allen & Company, LLC ("Allen") and  J.P. Morgan Securities LLC (" J.P. Morgan"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by both Allen and J.P. Morgan and provided to the Company and the Board.

8.    Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

9.    Plaintiff is a citizen of California and, at all times relevant hereto, has been a Nielsen stockholder.

10.    Defendant Nielsen together with its subsidiaries, operates as a measurement and data analytics company worldwide. Nielsen is incorporated in England and Wales and has its principal place of business at 675 Avenue of the Americas, New York, New York 10010.  Shares of Nielsen common stock are traded on the New York Stock Exchange under the symbol "NLSN".

11.    Defendant James A. Attwood, Jr. ("Attwood") has been a Director of the Company at all relevant times.  In addition, Attwood serves as the Chairman of the Board of Directors.

12.    Defendant David Kenny ("Kenny") has been a director of the Company at all relevant times. In addition, Kenny serves as the Company's Chief Executive Officer ("CEO").

13.     Defendant Thomas H. Castro ("Castro") has been a director of the Company at all relevant times.

14.     Defendant Guerrino De Luca ("Luca") has been a director of the Company at all relevant times.

15.     Defendant Karen M. Hoguet ("Hoguet") has been a director of the Company at all relevant times.

16.     Defendant Janice Marinelli Mazza ("Mazza") has been a director of the Company at all relevant times.

17.     Defendant Jonathan Miller ("Miller") has been a director of the Company at all relevant times.

18.     Defendant Stephanie Plaines ("Plaines") has been a director of the Company at all relevant times.

19.     Defendant Nancy Tellem ("Tellem") has been a director of the Company at all relevant times.

20.     Defendant Lauren Zalaznick ("Zalaznick") has been a director of the Company at all relevant times.

21.     Defendants identified in ¶¶ 11 - 20 are collectively referred to as the "Individual Defendants."

22.     Non-Party Elliot is a privately held investment fund.

23.     Non-Party Brookefiled is a privately held investment fund.

24.     Non-Party Merger Sub is a wholly owned subsidiary of Consortium created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to

confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

26.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

27.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

28.    Nielsen together with its subsidiaries, operates as a measurement and data analytics company worldwide. The company provides viewership and listening data, and analytics principally to media publishers and marketers, and advertising agencies for television, computer, mobile, CTV, digital, and listening platforms. It also offers television audience measurement services; digital audience measurement services; video advertising services; and independent measurement and consumer research primarily servicing radio, advertisers, and advertising agencies in the audio industry. In addition, it offers consumer behavioral and transactional data. Nielsen Holdings plc provides marketing solutions. The Company was founded in 1923 and is headquartered in New York, New York.

29.    The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success. For example, in the February 28, 2022 press release announcing its 2021 Q4 financial results, the Company highlighted Revenues of $894 million, an

increase of 2.5% on a reported basis, 2.9% on a constant currency basis, and 4.7% on an organic constant currency basis compared to the prior year period.

30.     Speaking on the positive results, CEO Defendant Kenny said, "We also made progress on strengthening our balance sheet, reducing our net debt leverage by over half a turn in 2021. We now have the flexibility to return more capital to shareholders while continuing to invest in organic growth initiatives and pursue strategic, tuck-in M&A. Our $1 billion share repurchase authorization reflects our Board's confidence in both our short and long-term growth prospects and enables us to deliver value to our shareholders."

31.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Nielsen.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

32.     Despite this upward trajectory, the Individual Defendants have caused Nielsen to enter into the Proposed Transaction without providing requisite information to Nielsen stockholders such as Plaintiff.

***The Flawed Sales Process***

33.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

34.     The Preliminary Proxy Statement is silent as to whether a committee of the Board composed of disinterested and independent members was created to run the sales process, and if so, their specific powers.

35.     Additionally, it appears that no committee of independent and disinterested directors was created to run the sales process.

36.     The Preliminary Proxy Statement also fails to provide adequate reasoning regarding why it was necessary to engage multiple financial advisors.

37.     Moreover, the Preliminary Proxy Statement is silent as to the nature of any existing confidentiality agreement entered into between the Company and the Consortium and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

38.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

39.     On March 29, 2022, Nielsen and Consortium issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **NEW YORK, March 29, 2022 /PRNewswire/** -- Nielsen Holdings PLC (NYSE: NLSN) ("Nielsen") today announced that it has entered into a definitive agreement to be acquired by a private equity consortium ("Consortium") led by Evergreen Coast Capital Corporation ("Evergreen"), an affiliate of Elliott Investment Management L.P. ("Elliott"), and Brookfield Business Partners L.P. together with institutional partners (collectively "Brookfield") for $28 per share in an all-cash transaction valued at approximately $16 billion, including the assumption of debt.
>
> The Nielsen Board of Directors voted unanimously to support the acquisition proposal, which represents a 10% premium over the Consortium's previous proposal and a 60% premium over Nielsen's unaffected stock price as of March 11, 2022, the last trading day before market speculation regarding a potential transaction. The Board reached this determination following a comprehensive review of the proposal, with the assistance of its independent financial and legal advisors.
>
> "After a thorough assessment, the Board determined that this transaction represents an attractive outcome for our shareholders by providing a cash takeout at a substantial premium, while supporting Nielsen's commitment to our clients, employees and stakeholders. the Consortium sees the full potential of Nielsen's

leadership position in the media industry and the unique value we deliver for our clients worldwide," said James A. Attwood, Chairperson of Nielsen's Board of Directors.

"After months of deep market analysis, industry diligence and management reviews, we are firmly convinced that Nielsen will continue to be the gold standard for audience measurement as it executes on the Nielsen ONE roadmap," said Managing Partner Jesse Cohn and Senior Portfolio Manager Marc Steinberg on behalf of Evergreen and Elliott. "Having first invested in Nielsen nearly four years ago, we have a unique appreciation for the Company's ongoing relevance to the global, digital-first media ecosystem. Today's outcome represents a significant win for Nielsen's shareholders and for the business itself, as our multibillion-dollar investment will help Nielsen reinforce its transformation at this critical inflection point. We are pleased to partner with David and the existing management team to lead Nielsen after the transaction is completed."

"Nielsen is deeply embedded in the media ecosystem and a trusted service provider to its customers. As a private company, Nielsen will be even better positioned to deliver the best measures of consumers' rapidly changing behaviors across all channels and platforms," commented Dave Gregory, Managing Partner, Brookfield Business Partners. "We are pleased to invest in this iconic company and help lead the industry into the next generation of audience measurement."

the Consortium has secured fully committed debt and equity financing, including an approximately $5.7 billion equity commitment from the Consortium consisting of Evergreen and Brookfield. There are no financing conditions to the closing of the transaction.

The transaction is subject to approval by Nielsen shareholders, regulatory approvals, consultation with the works council and other customary closing conditions. The transaction will also be subject to UK court approval pursuant to a scheme of arrangement. Alternatively, pursuant to the agreement, the parties may elect instead to complete the transaction pursuant to an agreed-upon tender offer. If the closing conditions are met, the transaction is expected to close in the second half of 2022.

The Company no longer intends to commence share repurchases under the Board's previously approved authorization.

**"Go-Shop" Period**

The transaction agreement provides for a "go-shop" period, during which Nielsen – with the assistance of its financial advisors, J.P. Morgan and Allen & Company, and its legal advisors – will actively solicit, evaluate and potentially enter into negotiations with parties that offer alternative acquisition proposals. The go-shop period expires 45 days after Nielsen's entry into the transaction agreement.

Following that period, Nielsen will be permitted to continue discussions and enter into or recommend a transaction with any person or group that submitted a qualifying proposal during the 45-day period, if the Board determines the proposal is superior to this transaction. A competing bidder who makes a superior proposal would bear a $102 million (1% percent of equity value) termination fee that is payable by Nielsen if Nielsen terminates the transaction agreement with the Consortium to accept such superior proposal.

### Potential Conflicts of Interest

40.     The breakdown of the benefits of the deal indicate that Nielsen insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Nielsen.

41.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Notably, the Preliminary Proxy Statement fails to provide an accounting of the merger consideration which such shares will be exchanged for as follows:

| Name of Beneficial Owner | Number | Percentage |
|---|---|---|
| James A. Attwood, Jr.[1] | 370,730 | * |
| Thomas H. Castro[1] | 20,745 | * |
| Guerrino De Luca[1] | 44,311 | * |
| Karen M. Hoguet[1] | 67,294 | * |
| Janice Marinelli Mazza[1] | 20,745 | * |
| Jonathan F. Miller[1] | 15,559 | * |
| Stephanie Plaines[1] | 7,266 | * |
| Nancy Tellem[1] | 26,715 | * |
| Lauren Zalaznick[1] | 52,348 | * |
| David Kenny[2] | 1,242,092 | * |
| Linda Zukauckas[3] | 169,233 | * |
| Karthik Rao[4] | 88,378 | * |
| George Callard[1] | 31,151 | * |
| Laurie Lovett[1] | 12,380 | * |
| Henry Iglesias[1] | 0 | * |
| All Directors and Executive Officers as a group (15 persons) | 2,168,947 | * |

42.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, the Preliminary Proxy Statement fails to provide an accounting of the amounts of equity awards owned by Company insiders nor of the specific amount of merger consideration such options will be exchanged for upon the consummation of the Proposed Transaction.

43.     Moreover, certain employment agreements with certain Nielsen executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

### Golden Parachute Compensation

| Named Executive Officer | Cash ($)[1] | Equity Awards ($)[2] | Tax Reimbursement ($)[3] | Total ($) |
|---|---|---|---|---|
| David Kenny | 8,675,583 | 26,849,878 | — | 35,525,461 |
| Linda Zukauckas | 4,482,833 | 9,415,400 | 4,722,115 | 18,620,348 |
| Karthik Rao | 3,185,167 | 5,429,437 | 3,337,489 | 11,952,093 |
| George D. Callard | 3,213,917 | 5,493,057 | 3,004,129 | 11,711,103 |
| Laurie Lovett | 2,640,167 | 4,057,474 | 2,877,393 | 9,575,034 |

44.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

45.     Thus, while the Proposed Transaction is not in the best interests of Nielsen, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

46.     On May 19, 2022, the Nielsen Board and the Consortium caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

47.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

    a.  Specific information regarding whether a committee of the Board was created to run the sales process composed of independent and disinterested Directors, and if so, the specific powers of that committee;

    b.  Specific information regarding why the Board engaged multiple financial advisors;

    c.  Whether the confidentiality agreements entered into by the Company with the Consortium differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and

if so, in all specific manners;

d.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including the Consortium, would fall away; and

e.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Nielsen and the Consortium' Financial Projections*

48.    The Preliminary Proxy Statement fails to provide material information concerning financial projections for Nielsen and the Consortium provided by Nielsen and the Consortium management to the Board, Allen, and J.P. Morgan and relied upon by J.P. Morgan in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company and the Consortium which are materially misleading.

49.    The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Nielsen and the Consortium management provided to the Board Allen and J.P. Morgan.  Courts have uniformly stated that "projections … are probably among the

most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

50.     With regard to the *Management Projections* including both the Management Case and Alternative Case projections, prepared by Nielsen Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

   a.  Adjusted EBITDA (post-SBC), including all underlying necessary metrics, adjustments, and assumptions, including specifically: net income or loss from continuing operations of Nielsen's condensed consolidated statements of operations before net interest expense, income taxes, depreciation and amortization, restructuring charges, impairment of goodwill, other long-lived assets, and other non-operating items.

   b.  Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: taxes, changes in working capital, capital expenditures, and certain other cash items.

51.   The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

52.   The Preliminary Proxy Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the Alternative Case of projections rely.

53.   This information is necessary to provide Plaintiff in her capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may

have been taken in bad faith, and cannot fairly assess the process.

54.    Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Allen and J.P. Morgan's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by J.P. Morgan*

55.    In the Preliminary Proxy Statement, J.P. Morgan describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

56.    With respect to the *Public Trading Multiples* analysis, the Preliminary Proxy Statement fails to disclose the following:

     a.    The individual metrics for each company compared;

     b.    The specific underling values, inputs, and assumptions used to calculate Adjusted EBITDA;

     c.    The specific value used for stock-based compensation for calendar year 2022; and

     d.    The underlying inputs and assumptions used to determine a reference range of 8.0x-10.0x for FV/CY 2022E Adjusted EBITDA.

57.    With respect to the *Selected Transactions Analysis* section, the Preliminary Proxy

Statement fails to disclose the following:

      a.   The value for each selected transaction compared;

      b.   The date on which each selected transaction closed;

      c.   The specific metrics for each selected Transaction;

      d.   The inputs and assumptions used to determine multiple ranges of 9.0x-12.0x for FV/LTM Adjusted EBITDA; and

      e.   The Specific value used for stock-based compensation for the 12-month period ending December 31, 2021.

58.     With respect to the *Discounted Cash Flow Analysis* section, the Preliminary Proxy Statement fails to disclose the following:

      a.   The range of terminal values calculated for the Company;

      b.   The estimated terminal value of Nielsen;

      c.   The specific inputs and assumptions used to determine a perpetual growth rate ranging from (a) 1.5% to 2.5% for the Management Case and (b) 0.5% to 1.5% for the Alternative Case;

      d.   The specific inputs and assumptions used to determine discount rates ranging from 8.5% to 9.5%;

      e.   The weighted average cost of capital for the Company;

      f.   The present value of the unlevered free cash flow; and

      g.   The values used for excess cash, minority interest, finance leases and total debt.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Allen*

59.     In the Preliminary Proxy Statement, Allen describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

60.     With respect to the *Selected Public Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

   a.   The individual metrics for each company compared;

   b.   The specific underling values, inputs, and assumptions used to calculate Adjusted EBITDA;

   c.   Each individual Wall Steet analyst report relied upon, the identity of the analyst, the specific price target, and the identity of the firm who produced the estimate;

   d.   The inputs and assumptions used to determine multiple ranges of  selected ranges of calendar year 2022 estimated adjusted EBITDA multiples derived from the selected companies of 8.0x to 10.0x to corresponding data of Nielsen;

61.     With respect to the *Selected Precedent Transactions Analysis.* section, the Preliminary Proxy Statement fails to disclose the following:

   a.   The value for each selected transaction compared;

   b.   The date on which each selected transaction closed;

   c.   The specific metrics for each selected Transaction;

   d.   The inputs and assumptions used to determine multiple ranges of  9.0x-12.0x for LTM Adjusted EBITDA; and

62.     With respect to the *Discounted Cash Flow Analysis* section, the Preliminary Proxy

Statement fails to disclose the following:

    a.    The range of terminal values calculated for the Company;

    b.    The specific inputs and assumptions used to determine a perpetual growth rate ranging from (a) 1.5% to 2.5% for the Management Case and (b) 0.5% to 1.5% for the Alternative Case;

    c.    The specific inputs and assumptions used to determine discount rates ranging from 8.25% to 9.25%;

    d.    The present value of the unlevered free cash flow; and

63.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

64.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Nielsen stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

65.   Plaintiff repeats all previous allegations as if set forth in full herein.

66.   Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

67.   Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

68.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

69.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

70.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

71.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

72.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

73.     Plaintiff repeats all previous allegations as if set forth in full herein.

74.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

75.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

76.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Nielsen's business, the information contained in its filings with the SEC, and its

public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

77.     The Individual Defendants acted as controlling persons of Nielsen within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Nielsen to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Nielsen and all of its employees. As alleged above, Nielsen is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the exchange act and disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May  26, 2022        **BRODSKY & SMITH**

            By: _____

Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*